The first case is 0650318, United States v. Lucatero-Campos. Each side has 10 minutes. Good morning. Good morning, Your Honor. Steve Hovechek, Federal Defenders, on behalf of Mr. Lucatero. Your Honor, it's based upon the Rule 28J letter that the government filed on the 12th, conceding that there is covian error in this case. I'm going to go straight to the harmless error issues with respect to that issue. Good. But I do want to make clear first that we are talking sort of a triple crown of violations here. There's no indictment. There's no grand jury finding. There's no petit jury finding. And there's no proof beyond a reasonable doubt as to the date of the deportation. So in analyzing harmless error, we have to look to all of those violations. So first, going to the grand jury violation. Grand jury errors, the omissions effectively of elements from the indictment, are not reviewed for harmless error. So effectively, we have a structural error here. So the sentence needs to be reversed regardless of any of the other harmless error issues that are floating around under Russell, Styrone, DuBose, that line of authority. The Supreme Court was possibly going to decide that issue in rescind this ponce, but ultimately they didn't choose to reach it. So this circuit's binding authority is that grand jury error is not reviewed for harmless error. So a reversal is required under that prong regardless. However, there's also a requirement of reversal under the jury trial type rights. There was no evidence presented at this trial from which a rational juror could find the date of deportation that the government needs to rely upon. There's effectively no evidence at all. So cases like Nieder and Reclenco have no application here because there's no evidence that the court can look to that was presented at the jury trial from which the court could make a conclusion that that jury necessarily needs to be reviewed. And the court necessarily would have found under the beyond reasonable doubt standard that the date of deportation that the government seeks to rely upon now had actually occurred. For future reference, what should a trial judge have done confronted with the 404B motion? Should there have been some negotiations and said, I want an admission from you? It may be prejudicial, it may be repetitive, and 404B grounds may be sustainable. But I want something in writing that says when we get to sentencing, if we get that far, this occurred. As a practical matter, no district court judge is going to be faced with that problem again because now the indictments in my district anyway, and I'm sure everywhere, all now contain the date of the deportation. The problem here is the indictment. It didn't allege a date of deportation. The district court was led to believe by both parties, including the government, that the 2001 deportation was the one that was going to be used as an element, not another deportation. So in that case, the district court was confronted with a situation where everyone, including the government, agreed that the proper deportation was the 2001 and then the other deportation they wanted to admit as 404B type evidence. So the district court properly analyzed what was presented to him by both parties as a 404B issue. But that, as a practical matter, that issue isn't going to come up anymore. But if the government had complied with the grand jury portion of the apprendee rights in the first instance, this issue never would have arisen in terms of the 404B complication. And I actually, just a side to the record, the government filed a supplemental excerpt of record at pages 6 to 17. There's a colloquy between the district court and the prosecutor, and the district court asks the prosecutor if the 2001 deportation would meet the elements that he needs to prove, and his answer is, yes, Your Honor. Then he goes on to say, but I think the warrant of removal, the most recent warrant of removal, is probative of the fact that it comes after other evidence we intend to enter that shows that there's a lack of mistake. So the government took the position that it was effectively 404B. If they had argued at that point, we want this to prove what's really an element of this crime to get the enhanced sentence, I think the judge would have ruled differently. And I guess at that point there would have had to have been an indictment objection since the prior conviction wasn't alleged. But basically, that's where we're left. I think that there are other sort of tangential issues. There's a suggestion in the government's briefing, I think, that the court should rely upon the evidence presented in the pre-sentence report, which was objected to. And at sentencing. But I think the law is pretty clear that when you're doing a Sixth Amendment harmless error analysis, you look to the Sixth Amendment proceeding. You look to the trial. In Nieder, they looked to the trial to see if materiality was proved beyond a reasonable doubt, and it was. In Reclenco, they looked to see whether at the trial the evidence was sufficient beyond a reasonable doubt on the gun enhancements. Go ahead. Are you familiar with a case decided in December called Cepeda-Martinez? Yes, I am. What do you make of that? Doesn't that do you in? No. It strongly supports my position, actually. Cepeda-Martinez adopts a harmless error analysis derived from Nordby. In fact, there's a footnote in Cepeda-Martinez. It's at page 1061, note 6, in which it explicitly derives its analysis. I'm sorry. I gave you the page site for Nordby. It's 913, note 3. In Cepeda-Martinez. It's a footnote in Cepeda-Martinez that adopts the Nordby analysis, then Nordby at 225, Fed 3 at 1061, note 6, explicitly says that in applying a jury trial, Sixth Amendment, harmless error analysis, this Court looks only to what happens at trial, not to things, even things that are admitted by the defendant at sentencing. So Cepeda-Martinez, on the contrary, strongly supports our position. But even if it didn't, Cepeda-Martinez is not an indictment case. So even if the Court comes out another way on the harmless error analysis, as I read Cepeda-Martinez adopting Nordby, that doesn't affect in any way our argument that it's structural error under the grand jury right, because Cepeda-Martinez is not an indictment case. In fact, in that case, the government did allege the date of deportation in the indictment, and the defendant actually had it stricken as surplusage. So there was no indictment issue in that case at all. For Cepeda-Martinez analysis, would the record on a trial, I would take it, would include the 404-B motion to exclude. And one of the bases for that motion was not the inaccuracy of the information, was it? I don't think that it was, no. I mean, I read the transcript. Does anybody challenge the accuracy of the 2004 deportation? At sentencing, yes. The defendant... Well, they said we challenge, we won't accept any of the immigration information. Yeah, that's correct. But in the 404-B context, no one challenged the accuracy of the information as a basis for excluding it. You're absolutely right. However, when we're doing a harmless error analysis, we have to look at what's presented to the jury, because they're the Sixth Amendment fact finder, and simply no evidence whatsoever was presented to the jury. So even if there had been a concession in that motion, which there wasn't, there just wasn't the type of objection that Your Honor is discussing, it still wouldn't matter. There was no evidence from which a jury could find that that deportation existed. If Your Honors don't have any further questions, I'd like to reserve. Sure. Thank you, Your Honors. Thank you. Good morning, Your Honors. I apologize for the late... Can we get your name for the record, please? ...the late J letter. It's been a kind of a moving target in our office with respect to how to address the Covian issue. What's your name, sir? Neville Headley for the United States. Thank you. I apologize, Your Honor. First of all, with respect to the structural error, I want to draw the Court's attention to the fact that on the excerpts of the record, there's been a lot of discussion about how to address the Covian issue. The first thing that I'd like to point out is that on pages 11 through 19 are the motions to dismiss the indictment that the defendant filed. Nowhere in those motions to dismiss the indictment, there's several errors alleged there. None of them address the 1326B enhanced sentence provision. So the government wasn't on notice that this was an issue. This is a situation where the defense would like to have the government be way ahead of the curve in terms of knowing where the Ninth Circuit jurisprudence is going to go with respect to 1326B and the enhanced sentencing. At the time this case was brought before the grand jury for an indictment, 1326B, the Elma and Deis Torres line of thought was considered to be fairly solid on legal grounds in terms of there was an exception to Apprendi, i.e. the prior criminal conduct. And only after Covian do we get the notion that you need to allege in the indictment that the defendant is being held on an indictment, the date of removal post-dating a felony conviction to enhance the sentence. Now, at trial, government attempted to elicit evidence that the defendant was indeed removed subsequent to one of his felony convictions. It would be the most recent removal. Now, I was the trial counsel, and I specifically told the judge, we want to prove up the initial IJ removal, the immigration judge's order, ordering the defendant deported, and the IJ and the warrant of removal associated with that order of deportation. Then there are subsequent reinstatements, and then the final one was in 2004. Why did you go to trial in the 2001? Why didn't you go on the 2004 to begin with? Well, because of the – it would have opened up a whole new can of worms. At that time, of course, Morales-Izquierda was in bonk, under in bonk review. We knew the defendant's position, defense counsel's position within our district, that a reinstated removal, and it's in their brief, was ultra-virus action by the government. And that would have created a whole new challenge for the government to face. It made most sense to prove an IJ removal, and then the most recent one, so that there was not any confusion for the jury that there was somehow this time lag of three or four years before the defendant was removed. Now, they specifically objected to multiple removals, saying it showed propensity. Now, I argued that not only did it show – that it wasn't being offered to show propensity, but it was also going to be offered to show lack of mistake, but also to clarify for the jury that this person wasn't just – that immigration wasn't just sitting on their hands with respect to this gentleman, that he had been removed pursuant to the IJ order, that he had come back again and been removed again through a reinstatement, and also helped prove identity. One more additional document showing his fingerprint on it, tying those A-file documents to the defendant. So they objected. Judge Subraw granted their motion in limine to preclude that information, and I was stuck with just the IJ order. Now, I suppose I could have gone forward on the reinstated removal, but that again would have led to the issues that are now percolating through their brief, both their initial brief and the reply brief, that initially, first, Morales-Izquierda was outstanding, that reinstated removals were not valid removals and were – were administratively incorrect. They were – they were ultra-virus. They were unconstitutional in respect to an overreaching by the immigration authorities in terms of their regulatory authority. And given the uncertainty of the law at that time, it made more sense just to prove – and the restrictions that Judge Subraw put on me, granting their motion in limine, I was left with no choice just to prove the original IJ order that predates any of his criminal history. But the record is replete with information, both in the PSR and their representations at the sentencing. There was no dispute that he had been removed several times. No dispute. And that evidence, had Judge Subraw not granted their motion, would have been in front of the jury. I would have proved and admitted into evidence a 2004 warrant of removal. So it's – the government's in a position where they get their way, and now it's error because they got their wish. Now, with respect to the structural error, I want to revisit that. I don't believe there is structural error, and they haven't preserved their objection. Because if you look at the motions to dismiss the indictment, excerpts of the record 11 through 19, nowhere in there, nowhere in there is there any type of objection to the fact that the date of removal was not postdating any of his felony convictions, was not alleged in the indictment. So, again, the government is not on notice that they are going to raise that as an objection. Therefore, they waived it. And I don't believe that they have preserved their objection by their footnote in the objections to the PSR, which is just a boilerplate kind of throwaway. We also object to the dates of removal as being a means to preserve that as an objection. So, again, it's – we're in a situation right now where this case was brought before the grand jury and then brought before a petite jury at trial where now, on appeal, the defense seems to be accusing the government that we should have been one step ahead of the Ninth Circuit in the Ninth Circuit jurisprudence coming down with rulings such as Covian. And I just don't see how that cannot be possibly be plain or a harmless error, given the things that the government was going to do and was not put on notice of by their failure to object with a motion to dismiss the indictment about the 1326b issue. And the last point I want to make is with respect to the Morales-Izquierda case and the briefing there, I think Luna Magdalena still is very, very, very solid law in the fact that 1326b speaks of removals. And nothing in Morales-Izquierda undermines that. Reinstatements were found to be a valid administrative process. The removal that Judge Sobral relied upon was a valid removal subsequent to a reinstatement of his prior immigration order of deportation. And with that, if there are no further questions, the government would submit. Thank you very much. Let me check. Your Honor, there was no motion to dismiss that could have been filed. The indictment was a valid, good indictment. It simply just didn't allege the crime that the government wanted to punish Mr. Lucatero for. So you don't go in if you're charged with manslaughter and say, you should dismiss this indictment because you could prove murder. They didn't allege the date of the deportation. That's correct. You didn't see anything wrong with the indictment for that omission? Right. There's nothing wrong with the indictment for that omission. They don't have to allege that as your position? Until they want to get an increased penalty when the date of the indictment becomes important, they don't have to allege it. I think as a matter of course, I think you'd have better notice if they did allege the date of indictment. So I mean, I personally have made such objections. But you don't move to dismiss the indictment because it doesn't charge a serious enough crime against your client. So there was no motion to dismiss it could be filed. The proper time to object when defense counsel did object at Exeter Record 58 and 63 was when the government tried to get an enhanced penalty above the two year maximum that was available based upon the crime that they charged in the indictment and based upon the evidence that they offered at the jury trial. So the bottom line is, is that there was no objection to be made prior to the trial because they failed to meet the notice requirements in the indictment right. Now, with respect to the government's further position that they were put in a difficult position. I mean, I'm sure that Mr. Hedley would argue that, you know, some issue that came down later on that the defense didn't object to should be reviewed for plain error. So the fact they didn't see Kovin, Sandoval coming doesn't really change anything. I suppose they could have indicted and alleged multiple indictments. Then we would have been forced to either make a motion to strike or not. But they didn't do that. They didn't allege any of the dates. So if they were worried about the Morales-Escalado thing, they didn't take any sort of legal steps that are sufficient under the Fifth Amendment to address that problem. So basically, we've got a Fifth Amendment structural error combined with no evidence at trial, no evidence proof beyond a reasonable doubt at trial. And this Court's case has clearly required reversal under all three of those circumstances. Thank you, Your Honor. The case you just argued is submitted. Good morning.
judges: T.G. Nelson, Silverman, Leighton